## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 24-72-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER |
| BYRON WAYNE MILLER, | |
| Defendant. | |

On June 11, 2024, Defendant Byron Wayne Miller moved to dismiss the indictment charging him with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) based on a three-judge panel's recent decision in *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024). (Doc. 15). In *Duarte*, the panel found 18 U.S.C. 922(g)(1), which prohibits convicted felons from possessing firearms, was unconstitutional as applied to Duarte, a nonviolent felon. 101 F.4th at 691. Upon Miller filing his motion, the Court held it in abeyance until the Ninth Circuit filed the mandate in *Duarte*. (Doc. 17).

After Miller filed his motion and before any mandate was filed, the Ninth Circuit granted rehearing *en banc* in *Duarte* and vacated the panel's decision. 101 F.4th 657, *reh'g en banc granted, opinion vacated*, 108 F.4th 786 (9th Cir. Jul. 17, 2024) (mem.). As the panel's decision no longer had precedential value, the Court lifted the abeyance and ordered the Government to respond to Miller's motion within

1

14 days of the order. (Doc. 23).

The Government responded on August 20, 2024, arguing that the Court should deny Miller's motion because the three-judge panel's decision in *Duarte* is "void of precedential effect" following the en banc panel's order and the Ninth Circuit otherwise upheld the constitutionality of § 922(g)(1) generally and as applied to nonviolent offenders in *United States v. Vongxay*, 594 F.3d 111 (9th Cir. 2010). (Doc. 24). Miller did not reply.

For the following reasons, the Court denies Miller's motion.

## I.    Factual Background

On May 20, 2024, Miller was charged with possession of a firearm or ammunition by a felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 2). According to Miller, he was involved in a single vehicle rollover crash in Stillwater County, Montana on October 21, 2023. (Doc. 16 at 2). A 9mm Taurus semi-automatic pistol was found among the crash debris. (*Id.*). Miller was arrested on an outstanding warrant from the Yellowstone County District Court, then indicted by a federal grand jury of the instant offense. (*Id.*). He pleaded not guilty to the offense on May 23, 2024. (Doc. 5).

According to Miller, he has the following felonies: a burglary conviction from 1988 in North Dakota; four drug possession convictions from 1990, 1994, 1998, and 2000 in Montana; a sale of drugs conviction from 1995 in Montana; and a

2

distribution of methamphetamine conviction from 2004 in federal court.  (*Id.* at 1–2).

## II.    Legal Standard

Rule 12(b)(1) of the Federal Rules of Criminal Procedure provides that a party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits.  A pretrial motion is proper when it involves questions of law rather than fact.  *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986).  The Court has determined Miller's motion is appropriate for pre-trial resolution because it solely involves a question of law.

## III.   Analysis

The Second Amendment guarantees as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court held that the Second Amendment protects an individual's right to carry a handgun for self-defense outside the home and rejected the means-end scrutiny test that courts of appeals had been applying when assessing the constitutionality of firearms regulations.  597 U.S. 1, 8, 19 (2022).  Instead, the Court held that courts must apply "[t]he test that we set forth in *Heller*" and "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."  *Id.* at 26 (citing *District*

3

*of Columbia v. Heller*, 554 U.S. 570 (2008)).

The "ever-evolving 'history-and-tradition' test outlined in *Bruen* and modified" by the Court's decision earlier this year in *United States v. Rahimi* "requires a two-step analysis to determine whether a law complies with the Second Amendment." *United States v. Youngblood*, __ F. Supp. 3d__ 2024 WL 3449554, at *3 (D. Mont. 2024) (citing 602 U.S. __ , 144 S. Ct. 1889, 1926–27 (2024) (Jackson, J., concurring)). First, if "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. Second, to regulate protected conduct, the government must show that its regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id.* This historical analysis requires courts to pay close attention to "[w]hy and how the regulation burdens the right." *Rahimi*, 144 S.Ct. at 1898. In doing so, "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'" *Id.* (quoting *Bruen*, 597 U.S. at 29); *see also Bruen*, 597 U.S. at 30 (requiring the government to "identify a well-established and representative historical *analogue*, not a historical *twin*.") (emphasis in original).

### A.   Vongxay *Governs*

Miller argues that § 922(g)(1) is unconstitutional as applied to him because,

4

under *Duarte*, the felon in possession statute is unconstitutional as applied to nonviolent offenders, and his felony convictions are not violent offenses.[1] (Doc. 16 at 8). Miller reasons that his convictions are not violent offenses because the statutes under which Miller was convicted penalize both violent and nonviolent types of conduct, and therefore the "modified categorical approach dictates that … they cannot be considered violent offenses." (*Id.* at 9–11).

The Government responds that Miller cannot rely on *Duarte* because it no longer has precedential effect. (Doc. 24 at 2). Instead, the Government maintains that the Court is bound by the Ninth Circuit's ruling in *Vongxay*, which affirmed the constitutionality of § 922(g)(1) without distinguishing between nonviolent and violent felons. (*Id.* at 3 (citing 594 F.3d at 1116 n.1, 1117)).

The Court agrees with the Government that the Court is bound to *Vongxay*, not *Duarte*. "[A] decision that has been vacated has no precedential authority whatsoever." *Marley v. United States*, 567 F.3d 1030, 1038 (9th Cir. 2009) (internal citation omitted). An en banc panel of the Ninth Circuit vacated the three-judge panel's decision in *Duarte* when it granted the government's request for rehearing

---

[1] Miller also partially relies on the Third Circuit's decision in *Range v. Attorney General United States of America*, which held that the nation did not have a history and tradition of stripping persons like Range, whose underlying felony was making a false statement to obtain food stamps, of their right to bear arms. (Doc. 16 at 4–5, 8 (citing 69 F.4th 96 (3d. Cir. 2023)). The Court declines to consider *Range* because, after Miller filed his motion and opening brief, the Supreme Court vacated and remanded *Range* for further consideration in light of *Rahimi*. *Garland v. Range*, 144 S. Ct. 2706 (2024) (mem.).

en banc. 108 F.4th 786. Thus, Miller cannot rely on *Duarte*, and more specifically its distinction between the constitutionality of § 922(g)(1) as applied to violent and nonviolent felons, in arguing for dismissal of the indictment.

Without *Duarte*, the precedent the Court must follow is *Vongxay*, as this Court, other judges in the District of Montana, and other district courts in the Ninth Circuit have repeatedly held before *Duarte* and after *Duarte* was vacated. *See, e.g., United States v. Page*, CR 23-06-H, 2023 WL 8702081, at *2 (D. Mont. Dec. 15, 2023) (collecting District of Montana and other Ninth Circuit district courts holding that *Vongxay* "remains binding authority after *Bruen*"); *United States v. Thomas*, 2:22-cr-0129, 2024 WL 3459059, at *1 (D. Nev. July 18, 2024) (applying *Vongxay* after *Duarte* was vacated); *United States v. Coleman*, CR-23-02363-001, 2024 WL 3890710, at *2 (D. Ariz. July 29, 2024), *report and recommendation adopted by* 2024 WL 3888700 (same). Applying *Vongxay*, those courts have held that § 922(g)(1) "passes constitutional scrutiny." *Page*, 2023 WL 8702081, at *2.

This Court joins those courts in upholding § 922(g)(1), as *Vongxay* is clear on the matter. 594 F.3d at 1116–17;[2] *see also United States v. Whitney*, No. 22-10326,

---

[2] Importantly, *Vongxay* did not apply the means-end scrutiny struck down by *Bruen*. Rather, it analyzed whether the Second Amendment historically allowed for the regulation of the possession of firearms by felons. It held that "most scholars of the Second Amendment agree that the right to bear arms was 'inextricably ... tied to' the concept of a 'virtuous citizen[ry]' that would protect society through 'defensive use of arms against criminals, oppressive officials, and foreign enemies alike,' and that 'the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals ....)." 594 F.3d at 1118 (quoting Don B. Kates, Jr. *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (1986); citing Glenn Harlan Reynolds, *A Critical*

2024 WL 1429461, at *2 (9th Cir. Apr. 3, 2024), *petition for cert. docketed* (Aug. 26, 2024) ("The felon-in-possession statute, 18 U.S.C. § 922(g)(1) is facially constitutional."). *Vongxay* also is clear that there is no constitutional distinction between violent and nonviolent felons, undermining Miller's claim that his supposed nonviolent felonies would exclude him from § 922(g)(1)'s prohibition.[3]  594 F.3d at 1116–17; *see also United States v. Phillips*, 827 F.3d 1171, 1173–74 (9th Cir. 2016); *Coleman*, 2024 WL 3890710, at *2.

As such, Miller's challenge fails under *Vongxay*.

B.   Bruen *Analysis*

The Government also maintains that even if *Vongxay* does not control, § 922(g)(1) is presumptively constitutional as applied to Miller under *Bruen*. (*Id.* at 4). The Court agrees.

Considering the first step of the *Bruen* test, neither party presents arguments on whether Miller's conduct is covered by the Second Amendment's plain text. *Bruen* undoubtedly held that handguns qualify as "arms" under the Second Amendment. *See Bruen*, 597 U.S. at 19, 31–32. However, no higher court has ruled on whether felons are included in the "people" covered by the Second Amendment.

---

*Guide to the Second Amendment*, 62 Tenn. L. Rev. 461, 480 (1995) (noting that felons "were excluded from the right to arms" because they were "deemed incapable of virtue.")).

[3] The Court does not reach the question of whether Miller's felonies are violent, since the current precedent binding this Court does not dictate such a distinction.

District courts in the Ninth Circuit seem to agree that, under *Heller* and *Bruen*, they are not because the right is limited to law-abiding citizens.  *See United States v. Butts*, 637 F. Supp. 3d 1134, 1137–38 (D. Mont. 2022) (holding that the Second Amendment is not extended to felons based on *Bruen* and *Heller*'s repeated references to "law-abiding citizens" and statements that felon dispossession statutes are "presumptively lawful"); *United States v. Roberts*, ___ F. Supp. ___, 2024 WL 50889, at *12 & n.157 (D. Alaska 2024) (collecting cases holding the same).  In contrast, other courts apply a "rights-based analysis," which asserts that "all people have the right to keep and bear arms but that history and tradition support Congress's power to strip certain groups of that right."[4]   *Roberts*, 2024 WL 50889, at *12 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (J. Barrett, dissenting)); *see also United States v. Montes*, No. 1:23-cr-00182-1, 2024 WL 3904631, at *4 (N.D. Ill. Aug. 22, 2024) (holding that felons are within the "people" covered by the Second Amendment because *Heller* and *Bruen*'s discussion of law-abiding citizens' Second Amendment rights did not decide the question of the scope of the right and

---

[4] *Duarte* adopted the rights-based approach, holding that "the people" means "all Americans," not a "unspecified subset" of people. 101 F.4th at 671 (quoting *Heller*, 554 U.S. at 580–81); *see also Range*, 69 F.4th at 103 (refusing to limit "the people" covered by the Second Amendment to "law-abiding, responsible citizens" and holding that the defendant was covered by the Second Amendment despite his previous false statement felony conviction); *Youngblood*, 2024 WL 3449554, at *4 (relying on *Duarte* before it was vacated in holding that that a defendant charged under § 922(g)(8) is covered by the Second Amendment's plain text because he is "an American citizen who possessed arms in common use."). Again, as *Duarte* is no longer good law, the Court is not bound to apply the rights-based approach.

because "the people" covered by other constitutional rights only sometimes excludes felons). As the matter is unresolved by the Ninth Circuit and the parties here do not brief it, the Court will assume without deciding that the first step is satisfied. *See Roberts*, 2024 WL 50889, at * 12 ("Given these disparate approaches to determining whether an individual's conduct is plainly covered by the Second Amendment, the Court assumes that the Second Amendment's plain text covers Roberts' conduct[.]").

Moving to the second step, the Court finds that historical analogues for the prohibition on the possession of weapons by both nonviolent and violent felons exist and are well documented in the courts. *See Medina v. Whitaker*, 913 F.2d 152, 158 (D.C. Cir. 2019) (discussing the evidence of the "tradition and history" that demonstrates that felons, including "non-dangerous" felons, do not have a right to bear arms under the Second Amendment); *United States v. Ramos*, 2:21-cr-00395, 2022 WL 17491967, at *4–*5 (C.D. Cal. Aug. 5, 2022) (discussing laws in existence at the founding that provide representative analogues to the felon in possession statute). Most of the Founding Era laws cited by courts restricted the possession of firearms by unvirtuous persons, which included felons who committed nonviolent crimes. *Medina*, 913 F.3d at 158–59 (describing how nonviolent crimes such as forgery and horse theft were felony crimes at the time of the Second Amendment ratification); *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) ("[M]ost

9

scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens." (cleaned up)); *Ramos*, 2022 WL 17491967, at *4 (discussing Founding Era laws that allowed for the dispossession of firearms from unvirtuous persons, which included common law felons).

This conclusion is affirmed by the Court's decisions in *Heller*, *McDonald*, *Bruen*, and *Rahimi*. In *Heller*, the Court wrote that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ...." 554 U.S. at 626. The Court considered this measure, among others, "presumptively lawful." *Id.* at 627 n.26. Two years later, in *McDonald*, the Court "repeat[ed] [its] assurances" that felon dispossession laws remain valid. *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010). Then, in *Bruen*, the majority stated that its holding "was in keeping with *Heller*" and repeatedly used the term "law-abiding citizen" in reference to the scope of an individual's Second Amendment rights. *See, e.g.*, 597 U.S. at 9, 29, 31, 38, 60, 70. In a concurring opinion in *Bruen*, Justice Kavanaugh, joined by the Chief Justice, "underscore[d]" that "the Second Amendment allows a 'variety' of gun regulations," and that nothing in the Court's opinion "'should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]'" *Id.* at 81 (quoting *Heller*, 554 U.S. at 626 n.26). Finally, the Chief Justice in the *Rahimi* majority once again

affirmed that "many … prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 144 S. Ct. at 1902; *see also United States v. Morales*, No. 24-cr-84, 2024 WL 3345982, at *2 (S.D.N.Y. July 8, 2024) (citing *Rahimi*, 144 S. Ct. at 1901) (holding that the *Rahimi* majority's "discussion of the long history of firearm regulations prohibiting dangerous persons from possessing arms aligns with the conclusion of the courts above: that § 922(g)(1), limited as it is to adjudicated felons, is consistent with the nation's historical tradition of firearm regulation."). In none of these cases does the Court distinguish between nonviolent and violent felons.

Accordingly, the weight of both the historical evidence and Supreme Court precedent demonstrates the constitutionality of § 922(g)(1) as applied to Miller under the *Bruen* framework.

## IV.    Conclusion

IT IS SO ORDERED that Defendant Byron Wayne Miller's Motion to Dismiss (Doc. 15) is DENIED.

DATED this 12th day of September, 2024.

SUSAN P. WATTERS
United States District Judge

11